IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

FILED
DISTRICT OF WYOMING
U.S. DISTRICT COURT

MAY 10 2017

U.S. MAGISTRATE JUDGE

BRENDA GORDON,

                Plaintiff,

vs.

T.G.R. LOGISTICS, INC. d/b/a T/G/R/ TRANSPORT; and IGOR V. VARGA, individually,

                Defendants.

Case No: 16-CV-00238-NDF

## ORDER ON MOTION TO COMPEL

This comes before the Court on the Defendant T.G.R. Logistics, Inc.'s motion to compel discovery production. The Court being fully advised in the premise hereby finds and orders:

## BACKGROUND

Defendant filed its *Combined Motion and Brief to Compel Discovery Production from Plaintiff Brenda Gordon* on April 21, 2017. [Doc 20]. Defendant seeks an order requiring Plaintiff to produce an electronic copy of her entire Facebook account history for the two Facebook accounts she has identified[1].

---

[1] The Defendant has now limited the request to three years prior to the date of the accident.

Defendant served the following Request for Production on Plaintiff on January 25, 2017:

> **REQUEST NO. 11:** Utilizing the instructions attached hereto, download and produce an electronic copy of your Facebook account history to the enclosed flash drive.

Neither party provided Plaintiff's response to this request for production, but from the arguments of the parties it is clear that the Plaintiff has not, and will not, voluntarily produce the Plaintiff's entire Facebook history. Nevertheless this Court is not aware of the specific objections Plaintiff presented in her response to the discovery request.

The parties have conferred and complied with the January 24, 2014 General Order and conducted an informal hearing with this Court on April 10, 2017. After hearing the nature of the pending motion the Court granted Defendant leave to file its motion to compel with briefing.

Plaintiff was driving her motor vehicle on June 28, 2015 on US Highway 309 in Lincoln County, Wyoming. As she was executing a left-hand turn she was struck by a tractor-trailer unit owned and operated by Defendant T.G.R. Logistics, Inc. and driven by Defendant Varga which was attempting to execute a pass in the left lane. As a result of this collision Plaintiff alleges numerous physical injuries, pain (back, neck and jaw), traumatic brain injury, posttraumatic stress disorder, anxiety and depression. Defendant asserts that Plaintiff's Facebook account history is relevant and necessary to its defense of the damages claimed by Plaintiff.

The Plaintiff responds that the request for the Facebook account history exceeds the permissible discovery limits of Federal Rules of Civil Procedure 26. Plaintiff further

asserts that the request is unduly burdensome, lacks relevance and is overly invasive of Plaintiff's privacy. Plaintiff emphasizes that she has downloaded and produced the information from her Facebook accounts that references the accident or her injuries. Further the Plaintiff has provided the Facebook information for the following keywords as set forth by Defendant in its request for production number 12 [Doc 20-2 Page 4]. Those keywords are: accident; attorney; TGR; Igor Varga; Kemmerer; Lincoln County, Wyoming; brain injury; concussion; posttraumatic stress disorder; and PTSD.

## Discussion

The scope of discovery is defined in Federal Rules of Civil Procedure 26(b)(1):

> *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

There are three basic steps for the court to consider when determining the appropriate scope of discovery under Rule 26(b)(1). Those steps are: (1) is the information privileged; (2) is it relevant to a claim or defense; and (3) is it proportional to the needs of the case. There being no claim of privilege asserted herein, this matter will resolve with a review of the final two criteria.

The courts have a long history of attempting to define the proper scope of discovery. The federal discovery rules were initially adopted in 1938 and have been described as a striking and imaginative departure from tradition. *Advisory Committees*

3

*Explanation Statement Concerning 1970 Amendments to Discovery Rules.* In the 1980s it became apparent that excessive discovery was becoming a problem.

> Excessive discovery innovation or resistance to reasonable discovery requests pose significant problems. ... The purpose of discovery is to provide a mechanism for making relevant information available to the litigants. "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Thus the spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues by overuse of discovery or unnecessary use of defensive weapons or evasive responses. All of this results in excessively costly and time-consuming activities that are disproportionate to the nature of the case, the amount involved, or the issues or values at stake.
>
> Advisory Committee Notes 1983 Amendment Federal Rules of Civil Procedure 26

With the amendments of the Rules beginning in 1983, the issue of proportionality was introduced into scope of discovery evaluations.

This effort to properly limit the scope of discovery comes at a time when the amount of available data for discovery is growing exponentially. More data has been created in the last two years than in the entire previous history of the human race and the amount of data is predicted to grow 10-fold by 2020. *Data set to grow 10-fold by 2020 as internet of things takes off*, Antony Adshead, ComputerWeekly.com/news/ 2240217788. A great deal of that data will involve social media.

Social media presents some unique challenges to courts in their efforts to determine the proper scope of discovery of relevant information and maintaining proportionality. While it is conceivable that almost any post to social media will provide some relevant information concerning a person's physical and/or emotional health, it also

has the potential to disclose more information than has historically occurred in civil litigation. While we can debate the wisdom of individuals posting information which has historically been considered private, we must recognize people are providing a great deal of personal information publicly to a very loosely defined group of "friends," or even the entire public internet. People have always shared thoughts and feelings, but typically not in such a permanent and easily retrievable format. No court would have allowed unlimited depositions of every friend, social acquaintance, co-employee or relative of a plaintiff to inquire as to all disclosures, conversations or observations. Now far more reliable disclosures can be obtained with a simple download of a social media history. A few clicks on the computer and you shortly have what can consist of hundreds of pages of recorded postings and conversations of a party. There can be little doubt that within those postings there will be information which is relevant to some issue in the litigation. It is equally clear that much of the information will be irrelevant.

Just because the information can be retrieved quickly and inexpensively does not resolve the issue. Discovery can be burdensome even as it is inexpensive. Courts have long denied discovery of information which was easy to obtain, but which was not discoverable. "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c)(1). Upon a finding of good cause a court may prohibit the production of relevant information. The recent inclusion of proportionality within Fed.R.Civ.P. 26(b)(1) further emphasizes this point.

The Defendant correctly observes that there would be very little time or expense involved in the initial production of Plaintiff's Facebook history. That's true on the front end. The problem is that such vast information has the potential to generate additional discovery or impact trial testimony. It's not difficult to imagine a plaintiff being required to explain every statement contained within a lengthy Facebook history in which he or she expressed some degree of angst or emotional distress or discussing life events which could be conceived to cause emotion upset, but which is extremely personal and embarrassing. There is also substantial risk that the fear of humiliation and embarrassment will dissuade injured plaintiffs from seeking recovery for legitimate damages or abandon legitimate claims. That being said, Defendant has a legitimate interest in discovery which is important to the claims and damages it is being asked to pay. Information in social media which reveals that the plaintiff is lying or exaggerating his or her injuries should not be protected from disclosure. Courts must balance these realities regarding discovery of social media and that is what most of the courts which have addressed this issue have done.

In *Equal Employment Opportunity Commission v. Simply Storage Management, LLC*, 270 F.R.D. 430 (S.D. Ind. 2010), the court denied a request for production of a claimant's entire Facebook and MySpace accounts. Even where the claimant alleges emotional injuries disclosure of their entire social media history is not required.

> [T]he simple fact that a claimant has *had* social communications is not necessarily probative of the particular mental and emotional health matters at issue in the case. Rather it must be the substance of the communication that determines relevance. See *Rozell v. Ross-Holst*, 2006 WL 163143 (S.D.N.Y. Jan. 20, 2006). As the *Rozell* court put it,

> To be sure, anything that a person says or does might in some theoretical sense be reflective of her emotional state. But that is hardly justification for requiring the production of every thought she may have reduced to writing or, indeed, the deposition of everyone she may have talked to.

Id. 434.

In *Simply Storage* the court ultimately allowed discovery of the claimant's communications which related any emotion, feelings or mental state or referenced events which could reasonably be expected to produce significant emotion responses. In issuing this order the court recognized that such discovery was appropriate for alleged severe emotion distress, as opposed to "garden variety" emotional distress. Id. 437

Similar reasoning has been expressed by other courts. In *Holter v. Wells Fargo and Co.*, 281 F.R.D. 340 (D.Minn. 2011), a former employer sought the entire Facebook history of the claimant.

> While everything that is posted on a social media website is arguably reflective of a person's emotional state, this court would not allow depositions of every friend and acquaintance to inquire about every conversation and interaction with plaintiff. So too, the court will not require plaintiff to produce all information from all her social media websites to obtain similar information.

> On the other hand, given the plaintiff has placed her employment with and termination of employment from defendant, along with her mental disability and emotional state in issue, the defendant is entitled to information from her social media websites that bear on these topics, including other stressors in plaintiff's life that could account for the emotional distress she is now claiming was due to her treatment at and termination of employment from defendant.

Id at 344

The United States District Court for the District of Kansas reminded us that our discovery rules provide the guidance to address social media discovery. While the medium of social media is relatively new, the principals of discovery remain the same.

> As it currently stands, the record does not support defendant's extremely broad discovery request for all-inclusive access to plaintiff's social media accounts. As plaintiff notes, such access could reveal highly personal information---such as plaintiff's private sexual conduct--- that is unlikely to lead to admissible evidence in this case. Information on social networking sites is not entitled to special protection, but a discovery request seeking it nevertheless must meet Fed.R.Civ.P 26's requirement that it be tailored "so that it appears reasonably calculated to lead to the discovery of admissible evidence." "Otherwise, the defendant would be allowed to engage in the proverbial fishing expedition, in the hope that there might be something of relevance in Plaintiff's [social networking] account[s]." The court agrees with courts that have recognized that a discovery request for unfettered access to social networking accounts--even when temporally limited-- would permit defendant "to cast too wide a net" for relevant information. As the court reasoned in *Ogden v. All-Star Career School*, [2014 WL 164-6934 (W.D.Penn. 2014) at 4]:

>> Ordering plaintiff to permit access to or produce complete copies of his social networking accounts would permit defendant to cast too wide a net and sanction an inquiry into scores of quasi-personal information that would be irrelevant and non-discoverable. Defendants are no more entitled to such unfettered access to plaintiff's personal email and social networking communications than it is to rummage through the desk drawers and closets in plaintiff's home.

*Smith v. Hillshire Brands*, 2014 WL 2804188 (D.Kan. 2014) at 4 to 5.

Admittedly, there are cases which have allowed broader discovery of social media accounts. Defendant relies upon *Held v. Ferrellgas, Inc.*, 2011 WL 3896513 (Kan. 2011). With little discussion the Court found that a request for Facebook information during a specified time period of employment was discoverable when Plaintiff could not recall if he posted anything relevant to the case on Facebook. The court did not share its analysis

or what factors the court considered or what guided it in allowing the discovery. This case was later distinguished by *Smith v. Hillshire Brands*. Citing to *Held*, the court in *Moore v. Miller*, 2013 WL 2456114 at 2 (D. Colo. 2013), granted discovery of Facebook history during the period of plaintiff's employment based upon the finding that the plaintiff "has chosen to share his version of events online often and in many different forums, including detailed and specific descriptions of what he alleges happened to him on March 25, 2008, as well as the injuries he allegedly suffers to this day."

The Defendant further relies upon *Appler v. Mead Johnson & Co. LLC*,2015 WL 5615038 (S.Ind. 2015). *Appler* differs from the other cases cited by Defendant. *Appler* recognizes and discusses at some length the reasons why discovery of social media is not unlimited. Ultimately the court granted broad access to the plaintiff's Facebook account due to the unique factual circumstances of the case. A critical issue involved the plaintiff's ability to work during earlier portions of the day as a result of her narcolepsy. A review of her entire Facebook activity history was relevant regarding her ability to work at different times of the day. The court made it clear that had the only issue been emotional damages, that the Facebook discovery would have been more limited.

The cases discussed have arisen in the context of employment related claims. Such claims are substantially driven by claims of emotional distress and the justification for discovery of social media histories is greater. Nevertheless, the general concepts would be applicable to a personal injury claim in which cognitive and emotional damages are claimed. Defendant, in apparent recognition that its initial request was overly broad, has offered to limit its request for social media temporally for three years prior to the

9

motor vehicle accident to present. Defendant asserts that it will be unable to defend Plaintiff's damage claims without access to information regarding Plaintiff's emotional state prior to the accident. Defendant still seeks the entirety of the Facebook activity from three years prior to the accident to present. In this Court's opinion that is casting the net too wide. In determining the appropriate scope of allowable discovery, it is important to consider that the Plaintiff seeks damages for physical injuries as well as damages for posttraumatic stress disorder, anxiety and depression. From what has been presented this case is more of the "garden variety" emotion distress claim as mentioned in *Simply Storage*. Granting access to Plaintiff's entire Facebook history would provide minimal relevant information while exposing substantial irrelevant information. As such the discovery would exceed the proper limits of proportionality.

The Defendant's claim that it would be unable to challenge Plaintiff's damage claims is exaggerated. Defendants have been effectively defending such garden variety emotional distress claims for many years and such claims typically make up a small part of the damages in physical injury cases. The Plaintiff also alleges a traumatic brain injury. Such damages have long been a subject of the evaluation and diagnosis by experts using proven testing protocols. This Court has not been provided any authority for the proposition that access to social media prior to the date of the accident would significantly contribute to the evaluation and diagnosis of these conditions. Therefore the Court will deny Defendant's request for social media discovery prior to the date of the accident of June 28, 2015. Nevertheless, the Court is not convinced that all relevant social media subsequent to that date has been produced. The Plaintiff will be required to

produce all relevant history which addresses Plaintiff's <u>significant</u> emotional turmoil, any

mental disability or ability, or relate <u>significant</u> events which could reasonably be

expected to result in emotional distress[2]. Plaintiff will also be required to produce all

Facebook postings which reference the accident, its aftermath, and any of her physical

injuries related thereto, insofar as such has not already been produced by Plaintiff. In its

reply brief Defendant discusses the impact of Plaintiff's injuries on activities she enjoyed

before the accident. The Court has not been provided any guidance as to what activities

of the Plaintiff may have been impacted by this accident. The Court will order the

production of Facebook history and photos which relate or show the Plaintiff's level of

activity after the accident.

The Defendant's Motion to Compel Discovery is **GRANTED** in the following

respects:

1. The Plaintiff is ordered to produce all post-June 28, 2015 Facebook history and

   photos which relate to Plaintiff's significant emotional turmoil, any mental

   disability or ability, or relate significant events which could reasonably be

   expected to result in emotional distress.

2. The Plaintiff is ordered to produce all post-June 28, 2015 Facebook history and

   photos which address or relate to the accident and its aftermath or any of her

   resulting physical or emotional injuries.

---

[2] The Plaintiff is to err on the side of disclosure and if the Plaintiff is uncertain, the relevant documents shall be provided to the Court for *in camera* review. The use of the term "significant" is to avoid disclosure of transient and trivial emotional distress.

3.  The Plaintiff is ordered to produce all post-June 28, 2015 Facebook history and

photos which relate or show the Plaintiff's level of activity.

The Defendant's Motion to Compel Discovery is **DENIED** in all other respects.

Dated this 10th day of May, 2017.

MARK L. CARMAN
UNITED STATES MAGISTRATE JUDGE